Our second case for oral argument is United States v. Anderson, Ms. Ramay. Colleen Ramay Good morning, Your Honors, and may it please the Court. My name is Colleen Ramay and I represent Jason Anderson and the appeal before the Court today. We are here today because Mr. Anderson was improperly sentenced to 15 years imprisonment as an armed career criminal following his conviction for being a felon in possession of a firearm. Mr. Anderson had previously been convicted of two counts of dealing in a controlled substance under Indiana law, an offense which prohibits not only delivery, manufacture, and possession with intent to deliver or manufacture a controlled substance, but also financing the manufacture or delivery and possession with intent to finance the manufacture or delivery of a controlled substance. Ms. Ramay, let me start you out, if I may. Do you dispute that the drug conviction involves dealing cocaine to the same confidential informant? Do you dispute that? Ms. Ramay No, Your Honor. Ms. Ramay Well, here's my problem. If you concede that, then wouldn't the transactions have been sequential rather than simultaneous, even if they occurred right around midnight? Ms. Ramay Your Honor, as an initial matter, my first argument is that the statute itself is overly broad, and so neither offense can be considered. In the alternative, the offenses could have occurred back to back, and I think that's part of the thing that we need to look at is that when you are talking about the categorical approach, the elements of the offense are necessarily involved, and we can really only look at what the state had to prove. So while it appears from the records of the cases that Mr. Anderson was convicted of dealing in cocaine with the same informant, confidential informant, the argument is that we shouldn't even really get there. I mean, that is information that was not part of the elements that were required for conviction, and so when we're looking at whether or not they occurred on occasions different from one another, to comply with the dictates of the categorical approach and the Sixth Amendment, we need to look at only what the court had defined as a matter of law in order to impose this heightened penalty. But before we even get there, neither of these offenses should count at all because the statute itself involves more conduct than the Armed Career Criminal Act definition of serious drug offense contemplates. So your theory, though, is that money doesn't have anything to do with these offenses. The serious drug offense is, putting to one side the amount of imprisonment, something involving manufacturing, distributing, or possessing, surely the financing of it. I can think of countless cases that involve transfers of money. Somebody's the money person in the drug business. So it's hard for me to see, even under the somewhat more restrictive view that the Ninth Circuit took, why the Indiana statute just brings up to the front something that's there in a great many statutes. Your Honor, I think that it's best to look at the kinds of activities that can encompass this financing under Indiana law. This seems to be a provision that is rarely invoked. However, in one particular case that I cited in my brief, a defendant was convicted under this statute for giving someone else some money to buy drugs for him. So he gave someone money, the other person bought the drugs, gave them to the defendant, and it was for personal use, it was drugs for personal use. And he was still convicted under this statute. This was the... Well, I think that... You send somebody off with the money, they get the drugs, they bring it back to you. Sure. By the same token, buying drugs is related to any of these offenses. Yeah. And you would say buying drugs doesn't count? I would say buying drugs doesn't count. I mean, that's inherent in the possession of drugs. And there's a fairly broad consensus among the circuits that mere possession doesn't count. The government cited to a First Circuit case from 2017, United States v. Mulkern. And in that case, the court looked at a statute that was titled trafficking, where the individual had to be convicted of possessing a heightened amount of a controlled substance. And the read-in implication was that it was for more than just personal use, but they never had to prove an intent to manufacture or intent to deliver. And therefore... But it's not just possession. Possession was intent to manufacture or deliver. Right, but possession of a heightened quantity would entirely be related to the idea of possession with intent to deliver. Well, it's a piece of evidence from which people regularly draw an inference that you do. I mean, if you have distribution quantities, think how often you see that testimony. Sure. So I'm not sure that's correct. But the difference in the Mulkern case was that no one proved to a jury or the defendant never admitted that they had the intent to distribute. So if you have a kilo of heroin, it wouldn't be a permissible inference that you were intending to distribute? Certainly a jury could make that inference, Your Honor. But when we're dealing with the categorical approach and dealing with imposing this heightened penalty, we need to look at what the statute requires and what the elements are. That is the only way that we comply with Apprendi and comply with this limited exception that was carved out in Almendarez-Torres. And I understand that. I guess I'm sort of still stuck on the idea that financing the delivery of, as the Indiana statute says, isn't really just a subset of distribution. Financing the delivery of. I believe that because you can be convicted for financing the delivery of effectively buying drugs. You can, you know, ask a guy to get some drugs for you. Right, and that happens. I mean, I guess I'm having trouble being shocked about that. But I suppose that I have a hard time finding the distinction between that and simple possession or just, I mean, buying drugs. Somebody could give the drugs to you for simple possession. You could make it if it happens to be methamphetamine. You could grow it if it happens to be marijuana. There are all sorts of reasons why you might possess drugs without being in the drug business. Well, I mean, most people who possess drugs have bought them. And we've said that the possession of drugs is not enough. Buying drugs, I haven't found a case that has been held to be enough under this statute. And I think that when we look at the way this involving operates, if we extend it past an elemental approach, we're in this weedy territory of looking at the ordinary case, which brings us into the Johnson territory and makes this unstable and does not assure the protections of the Sixth Amendment. Okay. If you'd like to stay for the last minute. Thank you. Thank you. Mr. Holler. Thank you. Good morning, Your Honors, and may it please the Court. Anderson's Indiana convictions for dealing cocaine qualify as serious drug offenses under the Armed Career Criminal Act. My opponent's claims about financing are incorrect for two reasons. First, all financing offenses do qualify as serious drug offenses. Second, even if they did not, the statute is divisible, and under the modified categorical approach, Mr. Anderson was convicted of delivery, not financing. In the first place, and just to deal a little bit with the issue that my opponent is raising, Indiana law, the Indiana statute, in fact, that's at issue, doesn't even include possession with the intent to distribute it. It includes manufacture, financing the manufacture, delivery, and financing the delivery. Those are the only ways you can be convicted. As far as what the definition of financing means, I've covered this in my brief. There is one Indiana case that has squarely been faced with this question, and that case is Hike v. Indiana, 934 Northeast 2nd, 1176. That case, in fact, said you can't be convicted of financing just for giving somebody money to buy drugs for personal use. That might well qualify as a serious drug offense under the statute, but it doesn't count anyway. The defendant cites a bunch of cases in the reply brief. Those are all unpublished decisions, and all but one of them involve what Hike says this statute is about, which is acting either as a broker on the distribution side or giving a distributor money to keep their drug dealing going. Those plainly qualify as serious drug offenses. So what would the distributor be doing with that money, using it to transport the drugs in a truck or flying someplace? I think most of these things are things that get counted in federal law as brokering a drug deal, somebody who doesn't actually hands on with the drugs but is sort of like the real estate agent, right? I'm helping you, distributor, because I know somebody who's willing to buy drugs from you. I'm connecting you with those things. I don't know what it would involve, Your Honor. I mean, the reality is that the statute is virtually never charged. The defendant does cite one case, which I do wish to address, which is Kibler v. the State of Indiana. That is an unpublished decision that predates Hike that doesn't even deal with this issue. In that case, the defendant helps his friend buy ten baggies of heroin, ten balloons of heroin. It's not clear to me whether he says this is for his personal use. That seems to me a large amount of quantity for personal use. It's not clear because it's not what's at issue in the case. What's at issue in the case is a double jeopardy question about whether the defendant can be convicted of both conspiracy and of the substantive offense. The Indiana court, in an unpublished opinion, says you can't, and so we're going to merge the offenses. Nobody raises the question of, hey, maybe you can't be convicted of this offense in the first place because you're on the buyer's side of the transaction. I mean, what the Supreme Court has said and what this court has repeatedly said is we're really going to look at what the highest court has said. The Indiana Supreme Court hasn't said anything. But what the Supreme Court and this court have never said is let's go find some unpublished decision when the court wasn't even thinking about the issue where there's some defendant somewhere who might have been convicted of this offense even if they shouldn't have been. Maybe Mr. Keibler shouldn't have been convicted of that offense. Maybe he should be able to go back into state court and say, in light of Hike, I'm not guilty. But that doesn't mean that the Indiana courts believe that you can be convicted of that offense. So even though, and there are, I mean, my opponent's correct. If you look at Mulkerin in the First Circuit, if you look at Brandon in the Fourth Circuit, those courts do say a serious drug offense doesn't involve merely buying drugs. It does have to involve buying with intent to distribute or something of that nature. But that doesn't have anything to do with the Indiana statute. The Indiana statute, in light of Hike, that's the most authoritative decision that we have. It's the only published decision. It's the only decision that interprets it. And that, as the court has said, counts. So regardless of what the Ninth Circuit said in Franklin and the split that it's created, those cases, the Ninth Circuit and the Eleventh Circuit case, are about a situation where there's conduct that fits under a state drug law that might not fit under the federal drug law. This conduct would all fit under the federal drug law. I mean, all of this would be covered. All of the things in Hike, all of the things that the court talks about, they would be covered by the federal drug law. There's no reason to consider it that way or to think of this as anything other than a serious drug offense. Even if the court thought that there was some question about whether financing qualified, the court could turn to the alternative argument. And under the modified categorical approach, the court would see that this defendant was in fact convicted of delivery. Right. So your opponent in the reply brief takes issue with some of the cases that you cite to show that these are elements rather than means. Well, again, Your Honor, I mean, I think both sides, to be frank here, this is not an issue that arises under Indiana law. Indiana doesn't take an elements-based approach to the Double Jeopardy Clause. Indiana takes a fact-based, sort of an old, I think the case is Grady, but the approach that the Supreme Court took for a few years of double jeopardy law and said, we think this is too messy. Indiana said, we don't think this is messy. We're going to stick with it. So Indiana doesn't really get into whether these are elements or not. So I mean, there may be some fluidity in state law or state practice because it doesn't really make any difference because you're never going to convict it. Right. So you're conceding that there are decisions that say A and B. Well, I think if you look at the text of the statute, though, if you look just at the text, because that's what we're supposed to really start with. We're supposed to look at the cases. We're supposed to look at the information or the indictment last. We're supposed to start with the text. So if you look at the text, which we put in the appendix, in some circumstances, if you deliver or finance the delivery on a school bus, you're guilty of a greater offense. But if you manufacture or finance the manufacture of drugs on a school bus or in a park, you're not guilty of the greater offense. If you look at the statute, it carries a greater penalty for delivery in some circumstances, the manufacturer. That suggests to the Supreme Court, under Mathis, that those are elements. And my opponent's reply to that is, well, maybe that's true. Maybe delivery and manufacture are separate elements, but delivery and finance are the same. Well, a year after Mr. Anderson's conviction, if you look at Government Appendix 4, they amended the statute. So now if you manufacture drugs on a school bus, that's in the higher quantity category. But financing the manufacturer isn't. So my opponent's reply to that is, okay, well, maybe manufacture and finance the manufacturer are separate elements and deliver and finance the delivery aren't. I mean, that's not a sensible reading of the statute. I mean, normally when we look at these things, they're either all elements or they're not. So I really think the only sensible way to read this statute, the way the Supreme Court has said it, these aren't examples of some other thing. These are mix-and-match elements. Is it this? Is it this? Is there some sloppiness in Indiana law? Absolutely. There is sloppiness in Indiana law. Why? Because it doesn't matter in any Indiana case. It matters in federal cases. And I don't think when Indiana courts are making these decisions, they're thinking about how is the Seventh Circuit going to interpret this in some unrelated context? Any more than this court is thinking about how some other court is going to interpret it in a different context. That's why we look at the difference between dicta, like Kibler, like the cases we've cited to, and square holdings like Hike. I want to move on because Judge Rovner addressed it to the... I mean, this is a broad issue. Right, this is a broad issue that affects many cases. We have many cases state pending this. So this is an important, very important question about Indiana drug law. But there's also Mr. Anderson's more specific argument. And I think that the dialogue that my opponent and Judge Rovner engaged in revealed that this really isn't a factual question. My opponent has conceded below and doesn't attempt to retract the concession here. These are separate offenses. And under, once again, binding Indiana law, this time from the Supreme Court, Duncan v. State, since 1980, there's no way I can possibly hand you two drugs at one time and be convicted of two offenses. The Indiana Supreme Court has said you can't do that. Even if it's two different drugs. So I can't hand you in my left-hand cocaine and my right-hand cocaine at the same time and be simultaneously convicted of two crimes. This has to be one and another. And I know there are members of this panel who disagreed with Hudspeth, but it's the law. And under Hudspeth, even if it's moments later, before midnight and after midnight, which I don't think there's any evidence that that's what happened here, but even if that is what happened here, under Hudspeth, the defendant's guilty. We just need the time to refrain from the second transaction. Right. You need some time to refrain from the second transaction. And under Taylor and Shepard, we can't look at the facts that would probably show something very different from that. We can just look at the indictment. We can just look at the change of plea transcript. And all of those show these occurred on separate days, September 21st and September 22nd. And even if they didn't, the defendant has conceded that argument away in his response to the PSR and hasn't sought to retract that concession here. Nothing in DeCamp or Mathis squarely holds that Almendarez-Torres is invalid. This court can't hold that. And this court said in Elliott six years ago, look, until the Supreme Court overrules Almendarez-Torres, you have to be able to look at the date. That's Morris. That's the 17-year-old precedent. So I don't think there's any reason for this court to even consider overruling Hudspeth. And as long as Hudspeth is good law, as long as Almendarez-Torres is good law, it may not last for long, but it also may. It's had staying power. It's had staying power. It's been on life support for 20 years. It's been 19 years since Apprendi, and it's still there. So I don't know. But if those precedents are valid, Indiana's drug offense counts, and he's been convicted of two Indiana and one Illinois drug offenses. So he's an armed per criminal. We would ask that his sentence, therefore, to that legal sentence be affirmed. Thank you. Thank you. Anything further, Ms. Romijn? I have a lot for my one minute. Thank you, Your Honor. First of all, I wanted to address the court's attention to the Lopez case that was cited in our brief that in a different context says that the financing is not delivery or manufacture. And so that addressed that issue, and I wanted to get back to that for the courts in response to the court's earlier question. In response to opposing counsel's argument about Hike, Hike was decided after Mr. Anderson was convicted in this case. And the reason that I recognize that we bring to the court's attention these unpublished decisions because that's typically the only place that we're going to see what kinds of various factual patterns get charged and convicted under these cases. So I do think that some of the unpublished decisions can inform this court's decision of how broad the statute really is. Finally, the idea that the statute somehow differentiates between elements because the, or between means, the various alternatives, and that makes them elements because the heightened form of committing the offense includes portions of those alternatives does nothing to show that they're elements, not means. It just means that if you're convicting someone of a heightened version of the offense that they have a more narrow range of conduct that they have to show.  of our argument is accurate. And if you'll allow me just one second to address this Hudspeth issue. The issue with Hudspeth is that when you're looking at figuring out whether things happened on separate occasions, this analysis necessarily involves a factual finding by the court. And that really stands in stark contrast with Almenduras-Torres and Buffendi. And so as difficult as that is, I think that probably cases like this demonstrate that the best answer is that if you want to show that they happened on separate occasions, maybe we do need to start pleading the enhancement in the complaint and the indictment. Okay. Thank you very much, Your Honor. Thanks to the government.